IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS W. WILLINGHAM,

        Plaintiff,

vs.                                        CIV NO. 09-0172 CG

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO REVERSE OR REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 15) with Memorandum in Support of Motion to Reverse or Remand Administrative Decision (Doc. 16) (collectively "Motion"), filed on September 16, 2009. The parties consented to have the undersigned magistrate judge conduct all proceedings and enter final judgment. (Docs. 6, 12.) The Court has reviewed Plaintiff's Motion (Docs. 15, 16), Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision ("Response") (Doc. 19), Plaintiff's Reply in Support of Motion to Reverse or Remand Administrative Agency Decision ("Reply") (Doc. 22), and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record ("R."). Because key findings in the Commissioner's final decision are not supported by substantial evidence, pursuant to

42 U.S.C. § 405(g) (sentence four), the Court will GRANT Plaintiff's Motion and REMAND the case for further proceedings consistent with this Memorandum Opinion and Order.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the administrative law judge's (ALJ) findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir.

2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981.  The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was considered by the ALJ.  *See Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision.  If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision.  *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981).  Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council.  *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).  A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review.  *See id.*  Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Maes*, 522 F.3d at 1096.

**Applicable Law and Sequential Evaluation Process**

A person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Background**

The claimant/Plaintiff, Mr. Willingham, was born on August 29, 1955 (R. at 27, 39). He has high school education (R. at 19, 270), and he has worked as an stocker, driver, automobile detailer, and warehouse worker (R. at 75). On July 24, 2006, Mr. Willingham applied for a period of disability and disability insurance benefits (DIB), alleging a disability-onset date of October 15, 2005. (R. at 39–41.) His application was denied initially (*see* R. at 14) and upon reconsideration (R. at 29–31). Mr. Willingham requested a hearing, which took place before ALJ George W. Reyes. (R. at 32 (request); R. at 265–94 (hearing transcript).) Ultimately, ALJ Reyes found that Mr. Willingham was not disabled at step five of the five-step sequential evaluation process. (R. at 19.)

At step one, the ALJ found that Mr. Willingham had not been engaged in substantial gainful activity since his alleged onset date of October 15, 2005. (R. at 16.) The ALJ, therefore, proceeded to the next step.

At step two, the ALJ found that Mr. Willingham's depression was not severe, but he also found that Mr. Willingham had other severe, medically determinable impairments: hypertension and lower back pain. *Id.* at 16–17. The ALJ acknowledged that Mr. Willingham had complained of depression to his treating physician, who had assessed Mr. Willingham's resulting limitations, but the ALJ rejected these limitations because: (a) "Dr. Amissah's treatment notes [did] not support the serious functional limits he has submitted;" (b) Dr. Amissah was not a mental health care specialist; (c) it appeared that Mr. Willingham had not followed through with a referral to discuss his life stressors; (d) Mr. Willingham had not sought focused mental health treatment; and (e) Mr. Willingham had not been diagnosed by a mental health care practitioner. *Id.* at 16. After rejecting the

opinion of the treating physician, the ALJ gave "significant weight to the determinations of the state agency medical consultants regarding [Mr. Willingham's] mental status." *Id.* The ALJ, therefore, found that Mr. Willingham had "no more than 'mild' limitations" in activities of daily living (ADLs), social functioning, and the ability to maintain concentration, persistence, and pace and that he had no extended periods of decompensation. *Id.* at 16–17. Based on these findings, the ALJ denied Mr. Willingham's request for a post-hearing, consultative mental health examination and found that his depression did not qualify as "severe" at this step. *Id.* at 17. Nevertheless, because the ALJ found that Mr. Willingham had at least one severe, medically determinable impairment—hypertension and lower back pain—he proceeded to the next step.

At the third step, the ALJ found that none of the step-two impairments, alone or in combination, met or medically equaled any of the Listings found in 20 C.F.R. § 404, subpt. P, app. 1. (R. at 17.) If any Listing had been met, the ALJ would have found Mr. Willingham disabled at this step. (*See* R. at 15.) Because the ALJ did not find that any Listing was met, he proceeded in the sequential evauation process.

Before step four, the ALJ determined Mr. Willingham's RFC. He found that Mr. Willingham was capable of performing a "full range of 'light' work."[2] (R. at 17.) To support this RFC, the ALJ explained why he found Mr. Willingham's complaints of back pain, medication side-effects, and other functional limitations not credible. *Id.* As further support, the ALJ explained that he was rejecting the opinion of the treating physician regarding Mr. Willingham's physical limitations because "Dr. Amissah's treatment notes

---

[2] *See* 20 C.F.R. § 404.1567 (defining "light work").

[did] not support the serious functional limits he has submitted." (R. at 18.) Lastly, the ALJ explained why he rejected the statement of Mr. Willingham's wife. (R. at 18–19.)

At step four, the ALJ found that Mr. Willingham did not have the RFC to return to his past relevant work. (R. at 19.) The ALJ, therefore, proceeded to step five. At the fifth and final step, considering Mr. Willingham's age, education, work history, and RFC, the ALJ utilized the Grid Rules,[3] which directed a finding of not disabled. *Id.* The ALJ also found that there were jobs in the national economy in significant numbers that Mr. Willingham could perform, but he did not list them. *Id.* The ALJ, therefore, found that Mr. Willingham was not disabled as defined in the Social Security Act at any time from the alleged onset date, October 15, 2005, through the date of the decision, September 3, 2008. (R. at 20.)

Mr. Willingham requested review of the ALJ's decision by the Appeals Council, submitting new mental health evidence from Brenda Wolfe, Ph.D., and from his treating physician, Dr. Amissah. (R. at 10; *see* R. at 252–64.) The Appeals Council made the new evidence part of the administrative record but denied review of the ALJ's decision because the new evidence was "not consistent with other substantial evidence of record." (R. at 4, 3–6.) ALJ Reyes' decision, therefore, is the final decision of the Commissioner, and Mr. Willingham's claim is ripe before this Court. *See* 42 U.S.C. § 405(g) (judicial review available after "final decision of the Commissioner").

## **Medical Evidence**

The record reflects treatment for high blood pressure, back pain, and depression, for which Mr. Willingham claims disability. Mr. Willingham was treated for hypertension at

---

[3] *See* 20 C.F.R. § 404, subpt. P, app. 2, §§ 202.15, 201.07.

almost every appointment reflected in the record, which spans 2004 to 2008. (R. at 134–136, 131–33, 129–30, 207–23, 233–39, 241–42.) The record reflects little treatment for back pain but does contain several references to it, including a radiology report showing disc disease at L4-L5 and L5-S1 and an assessment of resulting work-related limitations. (R. at 129–30, 250 (radiology report), 209, 205 (assessment).)

Complaints of and treatment for depression are also evident. In April of 2007, Edward Bocian, M.D., a consultative examiner for the Commissioner, reviewed the file and completed a Psychiatric Review Technique ("PRT") form. (R. at 186–200.) Dr. Bocian's specialty is listed as "adult physical." (R. at 200.) He opined that Mr. Willingham had no medically determinable psychiatric impairment and had no resulting functional limitations. (R. at 186, 196.) Dr. Bocian based his conclusions on forms completed by Mr. Willingham and by his mother regarding his illnesses and their effects. (R. at 198, 200.) It does not appear that he had any medical records to consider. (*See* R. at 186–200.) Ultimately, he concludes that "[b]ased on the lack of additional [medical evidence of record], I am affirming the prior non-severe [form] 416 which was signed and dated by Dr. Schneiderman on 08-26-06." (R. at 200.) Although Dr. Bocian refers to an assessment by Dr. Schneiderman, none is present in the record.

Mr. Willingham began complaining of mental health symptoms at University of New Mexico ("UMN") Health Center in May of 2007 (R. at 207-09), and soon thereafter, he was referred for counseling and prescribed psychiatric medications, Prozac and Trazodone (R. at 216-18, 210-12). In October of 2007, Mr. Willingham reported suicidal and homicidal ideation after his daughter was shot in the eye. (R. at 236-38.)

Treating physician, Dr. Amissah assessed Mr. Willingham's functional limitations due to his back pain and depression in February of 2008.  (R. at 204-05.)  Dr. Amissah checked the boxes on the "12.04 Affective Disorders" form, indicating that Mr. Willingham had:

> depressive syndrome characterized by . . . pervasive loss of interest in almost all activities; . . . appetite disturbance with change in weight; . . . sleep disturbance; . . . psychomotor agitation or retardation; . . . decreased energy; . . . feelings of guilt or worthlessness; . . . difficulty concentrating or thinking; . . . [and] thoughts of suicide; . . . resulting in . . . marked restriction of [ADLs]; . . . marked difficulties in maintaining social functioning; . . . marked difficulties in maintaining social functioning; . . . [and] marked difficulties in maintaining concentration, persistence, or pace.

(R. at 204.)  Dr. Amissah also assessed Mr. Willingham's "ability to do work-related activities (physical)" at that time.  (R. at 205.)  Dr. Amissah checked the boxes indicating that because of pain, Mr. Willingham could not "maintain physical effort for long periods without the need to decrease activity or pace, or to rest intermittently." *Id.* He also checked the boxes indicating that Mr. Willingham:  could frequently lift less than 5 pounds due to "chronic lower back pain;" could stand or walk "less than 2 hours of an 8-hour workday" due to "lower back pain;" could sit "less than 4 hours of an 8-hour day" due to "lumbar disc disease;" had limited ability to push and pull in his lower extremities due to "lumbar disc disease;" had no manipulative limitations; and could only occasionally kneel, stoop, crouch, and crawl due to "lumbar disc disease." *Id.*  Dr. Amissah also indicated that Mr. Willingham's non-physcial work activities were also affected.  *Id.*  In May 2008, Dr. Amissah prescribed citalopram, a generic version of the antidepressant Celexa.[4]  (R. at 245.)

---

[4] *Physicians' Desk Reference* 1344 (57th ed. 2003).

At the hearing, the ALJ denied Mr. Willingham's request for a consultative psychiatric examination, so Mr. Willingham secured his own evaluation with Brenda Wolfe, Ph.D., a Clinical Psychologist. Pl.'s Mot., Doc. 16 at 6. Dr. Wolfe diagnosed Mr. Willingham with Major Depressive Disorder, recurrent, severe with psychotic features; Panic Disorder with agoraphobia; Anxiety disorder; and rated his Global Assessment of Functioning (GAF) score as 40.[5] Dr. Wolfe opined that Mr. Willingham had "marked" limitations in the following areas: understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule/maintaining attendance and punctuality, working in coordination with/or in proximity to others without being distracted by them, and completing a normal workday and workweek without interruptions from psychological based symptoms and performing at a consistent pace. (R. at 256.) She also assessed moderate limitations in the ability to understand and remember very short and simple instructions, to sustain an ordinary routine without special supervision, and to get along well with coworker or peers without distracting them. *Id.* She further assessed Mr. Willingham's limitations due to his depression, which are consistent with Dr. Amissah's assessment from seven months prior. (R. at 258, 204; *see* R. at 259–64.)

## **Analysis**

Mr. Willingham argues that: (1) the ALJ erred in not finding that his mental impairment was severe at step two; (2) between steps three and four, the RFC was not

---

[5] The GAF is a determination using a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed. 2000). A GAF score of 40 indicates "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* at 34.

supported by substantial evidence; and (3) the ALJ erred at step five when he did not rely on Vocational Expert (VE) testimony.[6] Pl.'s Mot., Doc. 16 at 1. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. (Defs.' Resp., Doc. 19 at 3.) The Court finds that, considering all the evidence of record, substantial evidence does not support the ALJ's finding that Mr. Willingham's mental impairment was not severe at step two and further finds that substantial evidence does not support the RFC. Because the Court remands for errors at these earlier steps, the Court need not address Mr. Willingham's claim of error at step five regarding the absence of VE testimony. *See Neil v. Apfel,* No. 97-7134, 156 F.3d 1244, 1998 WL 568300, at *4 (10th Cir. Sept. 1, 1998) (unpublished) ("Because we remand for additional proceedings at step three, it is unnecessary to discuss plaintiff's allegations of error at step five in detail.").

*1. Substantial evidence does not support the ALJ's finding that Mr. Willingham's mental impairment was not severe at step two.*

In order to be "severe" at step two, the impairment or combination of impairments must "significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see* 20 C.F.R. § 404.1520(a). The ALJ, therefore, must assess "the functionally limiting effects of an impairment(s) on [the claimant's] ability to do basic work activities." Social Security Ruling (SSR) 96-3p at *1. Where evidence establishes a medically determinable impairment, the ALJ must evlauate the claimant's functional limitations in four areas, referred to as the "B-criteria": (1) ADLs, (2) social functioning, (3) concentration, persistence, and pace, (4) episodes of decompensation. 20 C.F.R.

---

[6] Although Mr. Willingham asserted these points in a different order, Pl.'s Mot, Doc. 16 at 1, the Court addresses them as listed above, mirroring the order of sequential evaluation steps.

§ 404.1520a(b)–(c). If the ALJ finds that the first three criteria are only mild and that there are no episodes of decompensation, the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). If, on the other hand, the ALJ finds that the limitations have "more than a minimal effect on [the claimant's] ability to do basic work related activities, [the ALJ] must find that the impairment is severe and proceed to the next step even if the objective medical evidence would not in itself establish that the impairment(s) is severe." *Id.* at *2.

Because the B-criteria dictate whether an impairment is severe at step two, the essential dispute here is *whose* B-criteria win out. The record contains three B-criteria assessments: one from Dr. Amissah, one from agency consultative examiner Dr. Bocian, and one from Dr. Wolfe. Also present, is a letter from Dr. Amissah expressly concurring with Dr. Wolfe's assessment.[7] At the core, Mr. Willingham argues that the ALJ erred in rejecting his treating physician Dr. Amissah's B-criteria, which would have constituted the requisite showing for a severe mental impairment. *See* Pl.'s Mot., Doc. 16 at 5–10.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are supported by the medical evidence and are consistent with the record; this is known as the "treating physician rule." 20 C.F.R. § 404.1527(d)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a

---

[7] When the ALJ issued his decision, he only had before him the assessments of Dr. Amissah and Dr. Bocian. Dr. Wolfe's assessment and Dr. Amissah's letter of concurrence were submitted to the Appeals Council after the ALJ had issued his decision. Because the Court, however, considers the entire record as a whole in determining whether substantial evidence supports the ALJ's decision, it will consider all three assessments and the letter of concurrence.

treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

Treating physician opinions—in order to receive controlling weight—must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit *controlling weight* but still receive *deference* and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(d). Not every factor is applicable in every case, however, and all six factors should not be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 404.1527(d)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps. First, the ALJ must find that the opinion (A) is not supported by medical evidence and/or (B) is not consistent with the record. Second, the ALJ must still give

deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.

In the case at bar, the ALJ rejected the treating physician Dr. Amissah's B-criteria in favor of consultative examiner Dr. Bocian's,[8] making findings that encompass both steps of the treating physician rule. The ALJ first found that Dr. Amissah's B-criteria were not consistent with his treatment notes. (R. at 16.) He then went on to weigh Dr. Amissah's B-criteria according to three of the six factors above: (factor 3) "Dr. Amissah's treatment notes [did] not support the serious functional limits he has submitted;" (factor 5) Dr. Amissah was not a mental health care specialist; and (factor 6) it appeared that Mr. Willingham had not followed through with a referral to discuss his life stressors, had not sought focused mental health treatment, and had not been diagnosed by a mental health care practitioner. (R. at 16.) Although he did not expressly state so, the ALJ ultimately gave no weight to Dr. Amissah's B-criteria or treatment notes regarding Mr. Willingham's mental status. *See id.* at 16–17 (finding no severe mental impairment at step two and finding no mental restrictions in the RFC).

The Court reviews the ALJ's reasons for rejecting Dr. Amissah's B-criteria in light of the record as a whole, including Dr. Wolfe's report. The reasons are not supported by substantial evidence. Three of the five reasons cited by the ALJ for rejecting Dr. Amissah's B-criteria opinion are undercut by Dr. Wolfe's report. First, the ALJ found that

---

[8] In his decision, the ALJ refers in the plural to "the determinations of the state agency medical consultants regarding [Mr. Willingham's] mental status." (R. at 16.) The record, however, contains only Dr. Bocian's assessment and no others. The Court notes that Dr. Bocian's assessment "affirm[s] the prior non-severe [assessment by] Dr. Schneiderman on 8-28-06," (R. at 200), but Dr. Schneiderman's assessment itself is not present in the record. The Court, therefore, can only consider Dr. Bocian's reference to other assessment and cannot consider the absent assessment itself.

14

Dr. Amissah's treatment notes did not support his B-criteria, but Dr. Wolfe's report and B-criteria assessment do support it. (R. at 16, 204, 256–63.) Second, the ALJ rejected Dr. Amissah's B-criteria because he is not a specialist in mental health, but Dr. Wolfe, whose B-criteria are consistent with Dr. Amissah's, is a Clinical Psychologist. (R. at 16, 253.) Moreover, Dr. Bocian, whose B-criteria was adopted by the ALJ, does not appear to be a mental health specialist himself; his specialty is listed as "adult *physical*." (R. at 200 (emphasis added).) Finally, the ALJ rejected Dr. Amissah's B-criteria because Mr. Willingham had not been diagnosed by a mental health care specialist, but he was diagnosed by Dr. Wolfe. (R. at 16, 255.) The only remaining reasons cited by the ALJ are that Mr. Willingham had never sought focused mental health treatment and had not followed up on a counseling referral. (R. at 16.) These reasons do not constitute substantial evidence for rejecting Dr. Amissah's B-criteria opinion because "the amount of treatment received by a claimant does not play a role in [the] determination [of his B-criteria]." *Grotendorst v. Astrue*, No. 09-2132, slip op. at 8 (10th Cir. Mar. 22, 2010) (emphasis omitted). Furthermore, Dr. Bocian never examined Mr. Willingham and did not have the benefit of Dr. Amissah's records. (R. at 200 (assessment predates Dr. Amissah's treatment and no reference to any medical records in narrative).) Dr. Wolfe is the only mental health specialist of record who has actually examined Mr. Willingham, and her B-criteria are consistent with those assessed by treating physician Dr. Amissah. (R. at 204, 252–264.) The ALJ's findings regarding Mr. Willingham's B-criteria are not supported by substantial evidence especially in light of the assessment by Dr. Wolfe.

*2. Substantial evidence does not support the RFC.*

In his Motion, Mr. Willingham argues that the RFC is not supported by substantial evidence because the ALJ improperly rejected the physical limitations assessed by his treating physician. Pl.'s Mot., Doc. 16 at 12–15. The Commissioner responds that the ALJ gave specific, legitimate reasons for rejecting the treating physician's assessment, and his decision is supported by substantial evidence. Def.'s Resp., Doc., 19 at 10–12. In his Reply, Mr. Willingham asserts an alternative basis for his argument. He asserts that the RFC is not supported by substantial evidence because the ALJ did not "describe how the evidence supports [the RFC]" at all. Pl.'s Reply, Doc. 22 at 5. He points out that the ALJ explained why he did not rely on the treating physician's assessments, but he did not explain on what evidence he *did* rely for the RFC. *Id.* Generally, courts do not consider arguments raised for the first time in the reply. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000). Because the argument in the Reply is not entirely new but rather an alternative basis for the argument originally propounded, the Court exercises its discretion and will address it along with the treating-physician argument. *See Dray v. Astrue*, No. 09-7058, 2009 WL 3821522 at *3 (10th Cir. Nov. 17, 2009) (unpublished) (exercising discretion in reviewing an issue raised for the first time in reply brief).

*a. Substantial evidence does not support
the ALJ's reasons for rejecting Dr. Amissah's opinion.*

The ALJ rejected Dr. Amissah's assessment of Mr. Willingham's physical impairments because "Dr. Amissah's treatment notes do not support the serious functional limitations he has submitted." (R. at 18.) The ALJ stated that the only reference to back pain in Dr. Amissah's notes was in conjunction with Mr. Willingham's disability application

and that, apparently, Dr. Amissah had not treated Mr. Willingham for back pain. *Id.* The ALJ, therefore, "afforded little evidentiary weight" to Dr. Amissah's opinion. *Id.* These findings represent the first step in the two-step process for evaluating treating physician opinions, as described above. The ALJ, however, stopped there; he did not proceed to the second step. Although he assigned a weight to Dr. Amissah's opinion, he did not explain the assigned weight according to the six factors. His rejection of Dr. Amissah's opinion, therefore, is not supported by substantial evidence.

### b. Substantial evidence does not support the RFC.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. Failing to identify the evidence that supports the RFC is reversible error. *Cox v. Apfel*, No. 98-5203, 198 F.3d 257, 1999 WL 820215, *4 (10th Cir. Oct. 14, 1999) (unpublished) (citing SSR 96-8p) (reversing and remanding where ALJ did not identify evidence supporting RFC); *Diggdon v. Apfel*, No. 98-5207, 189 F.3d 477, 1999 WL 617702, *3 (10th Cir. Aug. 16, 1999) (unpublished) (citing SSR 96-8p) (same). Furthermore, ALJs may not substitute their own lay opinions for medical opinions. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993).

The ALJ rejected the treating physician's assessment, but he cited to no other medical evidence to support the RFC. The ALJ also rejected the nonmedical evidence offered by Mr. Willingham himself and by his wife, but he cited to no other nonmedical evidence to support the RFC. The only physician of record who assessed Mr. Willingham's physcial limitations is Dr. Amissah. There is no other assessment. After improperly

rejecting the only medical assessment of record, the ALJ determined Mr. Willingham's RFC without identifying any evidence to support it. The RFC is not supported by substantial evidence; indeed it is supported by no evidence.

Because the Court remands for errors at prior steps, the Court need not address Mr. Willingham's claim of error at step-five. *See e.g. Neil v. Apfel,* No. 97-7134, 156 F.3d 1244, 1998 WL 568300, at *4 (10th Cir. Sept. 1, 1998) (unpublished). Remedying the errors identified by the Court will necessarily change the findings at step five, and therefore, Mr. Willingham's argument is moot.

## Conclusion

For the reasons stated above, the Court **FINDS** that substantial evidence does not support the ALJ's reasons for rejecting the treating physician's mental limitations and that substantial evidence does not support the RFC. Accordingly,

**IT IS HEREBY ORDERED** that Mr. Willingham's Motion to Reverse or Remand Administrative Agency Decision (Doc. 15) with Supporting Memorandum (Doc. 16) be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
**THE HONORABLE CARMEN E. GARZA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**